**LEILA W. MORGAN**
California Bar No. 232874
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Leila_Morgan@fd.org

Attorneys for Mr. Vasquez-Vegara

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JOHN A. HOUSTON)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 08CR1189-JAH |
| ) | |
| Plaintiff, ) | DATE: June 23, 2008 |
| ) | TIME: 8:30 a.m. |
| v. ) | |
| ) | |
| ENRIQUE VASQUEZ-VERGARA ) | STATEMENT OF FACTS AND |
| ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF MOTIONS |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS**[1]

On February 16, 2008, Border Patrol Agent Christopher Mehmel responded to a Seismic Senso Activation Alarm in the Campo, California area. Agent Mehmel found footprints leading into the brush. After following the footprints he found a total of five individuals attempting to hide themselves in the brush near an area located approximately 20 miles east of the Tecate, California Port of Entry and one mile north of the United States/Mexico International Boundary. Agent Mehmel immediately identified himself as a United States Border Patrol Agent and questioned all of the individuals as to their citizenship, nationality

---

1. The following is based primarily upon information supplied through Government discovery. Mr. Vasquez-Vergara does not stipulate to its accuracy and reserves the right to challenge it at future proceedings.

1  and immigration status. One of these individuals was later identified as Mr. Vasquez-Vergara. All of the
2  individuals stated that they were natives and citizens of Mexico who did not possess documents to enter or
3  remain in the United States legally. All of the individuals were arrested and taken to the Campo Border
4  Patrol Station of further processing.

5  On February 17, 2008 at approximately 1:13 a.m. Border Patrol Agent Edgar Gallegos advised Mr.
6  Vasquez-Vergara of his rights pursuant to *Miranda*. Agents allege that Mr. Vasquez-Vergara waived his
7  rights, agreed to speak with agents and made incriminating statements. Mr. Vasquez-Vergara allegedly
8  stated that he is a citizen of Mexico who entered the United states by crawling under the international
9  boundary fence at approximately 9:10 a.m. on February 16, 2008.

10 On April 16, 2008, an Indictment was handed down charging Mr. Vasquez-Vergara with violating
11 8 U.S.C. §1326 (a) and (b), deported alien found in the United States who had been removed subsequent to
12 October 1, 1990.

13 These motions follow.

## II.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

16 Mr. Vasquez-Vergara moves for the production of the following discovery. This request is not
17 limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in
18 the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See
19 United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

20 To date, ***defense counsel has received only 106 pages of discovery***. Mr. Vasquez-Vergara
21 respectfully requests that the Government be ordered to produce discovery because Mr. Vasquez-Vergara
22 has reason to believe that she has not received all the discoverable material in his case. Mr. Vasquez-
23 Vergara **specifically requests production of a copy of the taped proceedings and any and all documents**
24 **memorializing the deportation proceeding allegedly held and any other proceedings that the**
25 **Government intends to rely upon at trial**. This request includes discovery of materials known to the
26 Government attorney, as well as discovery of materials which the Government attorney may become aware
27 of through the exercise of due diligence. See FED. R. CRIM. P. 16.

28 Mr. Vasquez-Vergara has also not received a full copy of his A-file. Mr. Vasquez-Vergara

specifically requests the documents memorializing the alleged deportation proceedings and any other proceedings that the Government intends to rely upon at trial.

Mr. Vasquez-Vergara additionally requests that the Court order the Government to allow him the opportunity to review his A-file in its entirety. First, the A-file contains documentation concerning his alleged deportation. Part of Mr. Vasquez-Vergara defense may be that his underlying deportation was invalid. The documents in the A-file would help illuminate the validity or futility of such a defense. For example, A-file documents typically contain biographical information. Such information is essential to determining whether Mr. Vasquez-Vergara's deportation was invalid.

Second, the Government will likely try to show at trial that a Government officer searched the A-file and did not find an application by Mr. Vasquez-Vergara for permission to enter the United States. Mr. Vasquez-Vergara anticipates that the Government will attempt to admit a "Certificate of Non-Existence of Record" against him, arguing that if Mr. Vasquez-Vergara had ever applied for permission to enter the United States, such an application would be found in the A-file and because such an application is not in the A-file, Mr. Vasquez-Vergara must not have applied for permission to enter the United States.

Although the certificate might be admissible, the question of the thoroughness of the search conducted by the Government of the A-file is, and should be, open to cross-examination. United States v. Sager, 227 F.3d 1138, 1145 (2000) (error not to allow jury to "grade the investigation."). Mr. Vasquez-Vergara should be able to review his A-file in order to see whether any application for lawful admission exists. Moreover, Mr. Vasquez-Vergara should also be able to verify whether other documents that would ordinarily be in the A-file are "non-existent," or otherwise missing from his A-file. Mr. Vasquez-Vergara may assert a defense that his application for lawful entry was lost or otherwise misplaced by the Government. He must be allowed the opportunity to review his A-file and the manner in which it is being maintained by the Government in order to present this defense.

In addition, Mr. Vasquez-Vergara moves for the production of the following discovery:

1. **Mr. Vasquez-Vergara's Statements.** The Government must disclose to Mr. Vasquez-Vergara all copies of any written or recorded statements made by Mr. Vasquez-Vergara; the substance of any statements made by Mr. Vasquez-Vergara which the Government intends to offer in evidence at trial; any response by Mr. Vasquez-Vergara to interrogation; the substance of any oral statements which the

1  Government intends to introduce at trial and any written summaries of Mr. Vasquez-Vergara's oral
2  statements contained in the handwritten notes of the Government agent; any response to any <u>Miranda</u>
3  warnings which may have been given to Mr. Vasquez-Vergara; as well as any other statements attributed
4  to Mr. Vasquez-Vergara. FED. R. CRIM. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991
5  amendments to Rule 16 make clear that the Government must reveal <u>all</u> Mr. Vasquez-Vergara's statements,
6  whether written or oral, regardless of whether the Government intends to make any use of those statements.
7  **Mr. Vasquez-Vergara specifically requests all audio and videotaped copies of his statements and any**
8  **rough notes taken pertaining to the substance of his statements. Mr. Vasquez-Vergara requests that**
9  **the government provide him with a court-certified transcript of the compact disc depicting Mr.**
10 **Vasquez-Vergara's post-arrest interrogation by the agents.**

11         2. **<u>Arrest Reports, Notes and Dispatch Tapes</u>.** Mr. Vasquez-Vergara also specifically requests
12 the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that
13 relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not
14 limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr.
15 Vasquez-Vergara or any other discoverable material is contained. Such material is discoverable under FED.
16 R. CRIM. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The Government must produce arrest
17 reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and
18 prosecution reports pertaining to Mr. Vasquez-Vergara. <u>See</u> FED. R. CRIM. P. 16(a)(1)(B) and (c), FED. R.
19 CRIM. P. 26.2 and 12(i).

20         3. **<u>Brady Material</u>**. Mr. Vasquez-Vergara requests all documents, statements, agents' reports, and
21 tangible evidence favorable to Mr. Vasquez-Vergara on the issue of guilt and/or which affects the credibility
22 of the Government's witnesses and the Government's case. Under <u>Brady</u>, impeachment as well as
23 exculpatory evidence falls within the definition of evidence favorable to the accused. <u>United States v.</u>
24 <u>Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

25         4. **<u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>.**
26 Notwithstanding the advisory nature of the sentencing guidelines, the Government must produce this
27 information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), because it is exculpatory and/or mitigating
28 evidence relevant to a possible future determination with respect to sentencing.

5. **Mr. Vasquez-Vergara's Prior Record.** Mr. Vasquez-Vergara requests disclosure of his prior record. FED. R. CRIM. P. 16(a)(1)(B).

6. **Any Proposed 404(b) Evidence.** Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(c) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. Sufficient notice requires the government to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).

This request includes any "TECS" records as well as any other record(s) of prior border crossings (voluntary entries) that the Government intends to introduce at trial, whether in its case-in-chief, as impeachment, or in its rebuttal case. Although there is nothing intrinsically improper about prior border crossings (except, as here, where there are allegations of undocumented status), they are nonetheless subject to 404(b), as they are "other acts" evidence that the government must produce before trial. United States v. Vega, 188 F.3d 1150, 1154-1155 (9th Cir. 1999).

The defendant requests that such notice be given three weeks before trial to give the defense time to adequately investigate and prepare for trial.

7. **Evidence Seized.** Mr. Vasquez-Vergara requests production of evidence seized as a result of any search, either warrantless or with a warrant. FED. R. CRIM. P. 16(a)(1)(c).

8. **Request for Preservation of Evidence.** Mr. Vasquez-Vergara specifically requests the preservation of all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, Mr. Vasquez-Vergara's personal effects, and any evidence seized from Mr. Vasquez-Vergara.

9. **Henthorn Material.** Mr. Vasquez-Vergara requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material. See Kyles v. Whitley, 514 U.S. 419 (1995) (holding

that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the Government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally conduct examination of records; appropriate Government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); United States v. Herring, 83 F.3d 1120 (9th Cir. 1996) (accord).

10. **Tangible Objects.** Mr. Vasquez-Vergara requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, or copies of portions thereof, which are material to the defense, intended for use in the Government's case-in-chief, or were obtained from or belong to Mr. Vasquez-Vergara. FED. R. CRIM. P. 16(a)(1)(c). **Specifically, Mr. Vasquez-Vergara requests copies of the audio tapes of his alleged prior deportations or removals.**

11. **Expert Witnesses.** Mr. Vasquez-Vergara requests the name, qualifications, and a written summary of the testimony of any person that the Government intends to call as an expert witness during its case in chief. FED. R. CRIM. P. 16(a)(1)(E). The defense requests the notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the Government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any expert. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12. **Evidence of Bias or Motive to Lie.** Mr. Vasquez-Vergara requests any evidence that any prospective Government witness is biased or prejudiced against Mr. Vasquez-Vergara, or has a motive to falsify or distort his or her testimony.

13. **Impeachment Evidence.** Mr. Vasquez-Vergara requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Vasquez-Vergara. See FED. R. EVID. 608, 609 and 613; Brady v. Maryland.

1    14. **Evidence of Criminal Investigation of Any Government Witness.** Mr. Vasquez-Vergara requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

15. **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.** Mr. Vasquez-Vergara requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic.

16. **Witness Addresses.** Mr. Vasquez-Vergara requests the name and last known address of each prospective Government witness. Mr. Vasquez-Vergara also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a Government witness.

17. **Name of Witnesses Favorable to Mr. Vasquez-Vergara.** Mr. Vasquez-Vergara requests the name of any witness who made an arguably favorable statement concerning Mr. Vasquez-Vergara or who could not identify her or who was unsure of her identity, or participation in the crime charged.

18. **Statements Relevant to the Defense.** Mr. Vasquez-Vergara requests disclosure of any statement relevant to any possible defense or contention that he might assert in his defense.

19. **Jencks Act Material.** Mr. Vasquez-Vergara requests production in advance of trial of all material, including dispatch tapes, which the Government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at trial to allow Mr. Vasquez-Vergara to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

20. **Giglio Information & Agreements Between the Government and Witnesses.** Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Vasquez-Vergara requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other

information which could be used for impeachment.

21. **Agreements Between the Government and Witnesses.** Mr. Vasquez-Vergara requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement, promise, or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed, and specifically includes any discussion with a potential witness regarding that witness' immigration status and/or any affect that the witness' statements or lack thereof might have on that status, including the granting or revoking of such immigration status or any other immigration status, including but not limited to citizenship, nationality, a green card, border crossing card, parole letter, or permission to remain in the United States.

22. **Informants and Cooperating Witnesses.** Mr. Vasquez-Vergara requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Vasquez-Vergara. The Government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The Government must disclose any information derived from informants which exculpates or tends to exculpate Mr. Vasquez-Vergara. Brady v. Maryland, 373 U.S. 83 (1963)

23. **Bias by Informants or Cooperating Witnesses.** Mr. Vasquez-Vergara requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information includes, but is not limited to, any inducements, favors, payments or threats that were made to the witness in order to secure cooperation with the authorities.

24. **Scientific and Other Information.** Mr. Vasquez-Vergara requests the results of any scientific or other tests or examinations conducted by any Government agency or their subcontractors in connection with this case. See Rule 16(a)(1)(D).

25. **Residual Request.** Mr. Vasquez-Vergara intends by this discovery motion to invoke his rights

to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Mr. Vasquez-Vergara requests that the Government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

### III.

### THIS COURT SHOULD DISMISS THE INDICTMENT FOR ITS FAILURE TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE

The indictment charges Mr. Vasquez-Vergara with being a previously-deported alien found in the United States in violation of 8 U.S.C. § 1326. The indictment fails to allege elements necessary to convict Mr. Vasquez-Vergara of the offense: that Mr. Vasquez-Vergara knew he was in the United States, he failed to undergo inspection and admission by an immigration officer at the nearest inspection point, and that he voluntarily entered the United States. As a consequence, it must be dismissed. See e.g., Nyrienda v. I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting forth the components of an entry under the immigration law); see also United States v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999);.

However, because these issues were decided against Mr. Vasquez-Vergara in United States v. Rivera-Sillas, 376 F.3d 887 (9th Cir. 2004), they are not briefed herein, but are raised to preserve them for further appeal. (Mr. Vasquez-Vergara would be happy to submit further briefing on these issues to this Court, if so ordered.)

### IV.

### MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

*Defense counsel has received only 106 pages of discovery*. As more information comes to light, due to the government providing additional discovery in response to these motions or an order of this Court, the defense may find it necessary to file further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

**V.**

**CONCLUSION**

For the foregoing reasons, Mr. Vasquez-Vergara respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated: June 3, 2008

*s/ Leila W. Morgan*
**LEILA W. MORGAN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Vasquez-Vergara
Leila_Morgan@fd.org